United States Court Of Appeals
*for the*
Third Circuit

Case No. 24-2761

CHRISTOPHER MASSEY,

*Appellant,*

v.

BOROUGH OF BERGENFIELD, et al.,

*Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
DOCKET NO. 2:20-CV-01942, HONORABLE JAMEL K. SEMPER

**REPLY BRIEF OF APPELLANT
CHRISTOPHER MASSEY**

DYLAN T. HASTINGS, ESQUIRE
WILLIAMS CEDAR LLC
*Attorneys for Appellant*
One South Broad Street
Suite 1510
Philadelphia, PA 19107
215-557-0099

i

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

ARGUMENT .....................................................................................2

  **I.**  Appellees Cannot Prove that
     Rabboh was More Qualified than Appellant ...........................2

  **II.**  Appellees Fail to Substantively
     Address Appellant's Alternative
     "Background Circumstances" Argument..................................3

  **III.**  Appellees Admit that the District Court
     Committed an Error of Law by Dismissing
     Appellant's Fourteenth Amendment
     Equal Protection Claim, but Still Ask this
     Court to Affirm the Dismissal...................................................4

  **IV.**  Appellees Misconstrue What Plaintiff
     Must Prove to Establish His *Prima Facie*
     Case of Reverse Discrimination Under
     the Fourteenth Amendment's
     Equal Protection Clause..........................................................5

  **V.**  All the "Legitimate, Non-Discriminatory"
     Reasons Offered by Appellees to Justify
     Their Vote for Rabboh are Pretext for
     Race Discrimination...............................................................10

  **VI.**  Appellees' Decision to Promote Rabboh
     Over Appellant Based on Race Constitutes
     an Official Borough Policy as Appellees are
     the Borough's Final Policymakers ..........................................17

CONCLUSION .......................................................................20

COMBINED CERTIFICATIONS......................................................21-22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ..................................................................18

*Bradley v. Pittsburgh Bd. of Educ.,*
913 F.2d 1064 (3d Cir. 1990)....................................................5

*Bytner v. Allegheny Cnty. Jail,*
2018 WL 4407837 (W.D.Pa. 2018) ..........................................4

*Cappella v. City of Atl. City,*
2014 WL 1281516 (App. Div. 2014) .......................................2, 3

*Celotex v. Catrett,*
477 U.S. 317 (1986), ................................................................9

*Durst v. City of Philadelphia,*
798 Fed.Appx. 710 (3d Cir. 2020)............................................8

*Farrell v. Planters Lifesavers Co.,*
206 F.3d 271 (3d Cir. 2000)....................................................7, 10

*Finley v. Camden Cnty. Bd. of Chosen Freeholders,*
2011 WL 2473298 (D.N.J. 2011) ..............................................6

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir. 1994)......................................................7, 10

*Iadimarco v. Runyon,*
190 F.3d 151 (3d Cir. 1999)....................................................5, 6

*Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989) ................................................................18

*McCann v. Astrue,*
293 Fed.Appx. 848 (3d Cir. 2008)..............................6

*McGovern v. City of Philadelphia,*
554 F.3d 114 (3d Cir. 2004).......................................17

*McGreevy v. Stroup,*
413 F.3d 359 (3d Cir. 2005)......................................18

*McMillion v. Monroe Cnty.,*
520 U.S. 781 (1997) .................................................19

*Medcalf v. Tr. of Univ. of Pa.,*
71 Fed.Appx. 924 (3d Cir. 2003)...............................6

*Monell v. Dep't of Soc. Serv. of City of N.Y.,*
436 U.S. 658 (1978) ...........................................17, 18

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986) ...........................................17, 18

*Shields v. Penns Grove-Carneys Point Reg. Sch. Dist.,*
2016 WL 818815 (D.N.J. 2016) ................................7

*Warenecki v. City of Philadelphia,*
2010 WL 4344558 (E.D.Pa. 2010) ............................6

*Williams v. Borough of West Chester,*
891 F.2d 458 (3d Cir. 1989).......................................9

*Williams v. Pa. Human Rel. Comm'n,*
870 F.3d 294 (3d Cir. 2017)....................................4, 5

*Zulauf v. Stockton Univ.,*
2017 WL 700111 (D.N.J. 2017) ................................7

**Statutes and Other Authorities:**

42 U.S.C. § 1981 ...............................................................*passim*

42 U.S.C. § 1983 ...............................................................*passim*

Title VII ...........................................................................*passim*

*N.J.S.A.* 40A:60-6(a) .............................................................19

Appellant submits this Reply to the Brief of Appellees.

## **<u>INTRODUCTION</u>**

The District Court committed reversible error by granting Appellees' motion for summary judgment. Notably, the evidence overwhelmingly demonstrates that Appellant proved his *prima facie* case of reverse racial discrimination under the New Jersey Law Against Discrimination ("NJLAD") based on Appellant's superior qualifications compared to Mustafa Rabboh's ("Rabboh") and the background circumstances leading up to Appellees' decision to promote Rabboh. Further, the District Court erred as matter of law by concluding that "claims for race discrimination may not be brought pursuant to Section 1983" when this Court's own authority provides otherwise and by dismissing Appellant's § 1981 claim against the Borough of Bergenfield (the "Borough") even though this Court's precedent supports such a claim. Despite these errors, the District Court still concluded that Appellees offered "legitimate, nondiscriminatory reasons" for their promotional decision all the while ignoring the evidence presented by Appellant demonstrating that every proffered reason was pretext for race

discrimination. Appellees have failed to meaningfully address the District Court's errors or Appellant's arguments in their opposition brief.

## **ARGUMENT**

### I. **Appellees Cannot Prove that Rabboh was More Qualified than Appellant.**

In their opposition brief, Appellees seek to portray Appellant's NJLAD argument as one that paints Rabboh as an "unqualified minority." However, Appellees' logic ignores the evidence Appellant must establish to prove his *prima facie* case of reverse racial discrimination under the NJLAD, i.e. that he was more qualified than Rabboh for the promotion to Chief. *See, e.g. Cappella v. City of Atl. City*, 2014 WL 1281516, at *11 (App. Div. 2014). The undisputed evidence proves that he was and Appellees have offered no evidence to counter this because there is none. Rather, Appellees focus their argument on Appellant's and Rabboh's interviews which in no way addresses which candidate was more qualified for purposes of Appellant's *prima facie* NJLAD claim. In fact, none of the evidence Appellees cite in their opposition even relates to Appellant's qualifications versus Rabboh's which should be seen as an admission that Appellant was more qualified. Because Appellees failed to cite any evidence that proves that Rabboh was more qualified than

Appellant for the promotion to Chief, this Court should find that Appellant satisfied his *prima facie* case of reverse racial discrimination under the NJLAD and remand this case for further proceedings on the merits.

## II. Appellees Fail to Substantively Address Appellant's Alternative "Background Circumstances" Argument.

While Appellant has proven his *prima facie* case of reverse racial discrimination under the NJLAD because he was more qualified than Rabboh, he has also proven it based on the events leading up to Appellees' decision to promote Rabboh and those events thereafter which suggest that Appellees had an "agenda or inclination" to discriminate against Appellant because of his race. *Cappella*, 2014 WL 1281516 at *11. Appellees equate this argument to a civil conspiracy and contend that such a suggestion is unfounded while completely avoiding the undisputed facts outlined in Appellant's opening brief. Appellees fail to grasp Appellant's alternative "background circumstances" argument and focuses almost entirely on Appellees' remarks at Rabboh's swearing in ceremony which, without the context of the preceding events, do not independently prove Appellant's *prima facie* case under the NJLAD. It is those preceding events that Appellant detailed in his opening brief, and

that Appellees ignored in their opposition, that prove his alternative *prima facie* case under the NJLAD. Because Appellees fail to substantively address this argument in any meaningful fashion, this Court should find that Appellant has satisfied his *prima facie* NJLAD case under this theory as well and remand this case for further proceedings on the merits.

## III. Appellees Admit that the District Court Committed an Error of Law by Dismissing Appellant's Fourteenth Amendment Equal Protection Claim, but Still Ask this Court to Affirm the Dismissal.

In Appellees' opposition brief, they seemingly admit that the District Court's reliance on *Williams v. Pa. Human Rel. Comm'n*, 870 F.3d 294 (3d Cir. 2017) in dismissing Appellant's Fourteenth Amendment Equal Protection claim was in error. That is because this Court in *Williams* did not hold that "employment-related claims for race discrimination may not be brought pursuant to Section 1983." This being so, Appellees still ask this Court to affirm the District Court's decision relying on dicta from *Bytner v. Allegheny Cnty. Jail*, 2018 WL 4407837 (W.D.Pa. 2018). In *Bytner*, the plaintiff's § 1983 claims were dismissed as time barred, but the District Court, incorrectly relying on *Williams*, noted that even if the claims were not time barred that "employment-related

claims for racial discrimination may not be brought under § 1983." *Id.* (citing *Williams*, 870 F.3d at 300). Not only is this reference to *Williams* dicta, but it also is in direct conflict with this Court's decision in *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3d Cir. 1990) which confirms that a plaintiff can bring employment related claims for racial discrimination under both Title VII and § 1983. Thus, Appellees' argument fails and this case must be remanded for further proceedings on the merits.

## IV. Appellees Misconstrue What Plaintiff Must Prove to Establish His *Prima Facie* Case of Reverse Discrimination Under the Fourteenth Amendment's Equal Protection Clause.

Appellees attempt to advance an argument that even though Appellant's Fourteenth Amendment Equal Protection claim was properly pleaded that it still must fail because Appellant cannot prove that he was treated "less favorably than others because of his race . . ." under *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999). In support of this argument, Appellees rely on the fact that Caucasians have been promoted to leadership positions in the Borough and that Appellant and Rabboh were treated "in identical fashion" with respect to the interview process for the promotion to Chief. Appellees' argument misconstrues

what is required to prove a *prima facie* case of reverse racial discrimination claim under the Equal Protection Clause and *Iadimarco*.

"In cases of 'reverse discrimination,' all that is required to establish a *prima facie* case 'is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco,* 190 F.3d at 161. "[A] non-minority plaintiff must show (1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action was based on a trait protected." *Finley v. Camden Cnty. Bd. of Chosen Freeholders*, 2011 WL 2473298, at *9 (D.N.J. 2011) (quoting *Warenecki v. City of Philadelphia*, 2010 WL 4344558, at *14 (E.D.Pa. 2010) (quotation omitted); *see also Medcalf v. Tr. of Univ. of Pa.*, 71 Fed.Appx. 924, 927 (3d Cir. 2003) (University conceded that the plaintiff made out a *prima facie* case of reverse gender discrimination because (1) he was a male; (2) who applied for and was qualified to perform the job he applied for; (3) that he was rejected; and (4) that the University selected a woman for the position); *McCann v. Astrue*, 293 Fed.Appx. 848, 851 (3d Cir. 2008)

(*prima facie* case of reverse racial discrimination established based on a minority being promoted over the plaintiff, a decision maker making a statement to the plaintiff regarding his race, and a hearsay statement from a manager that another manager told him that he could not hire a Caucasian from a list that he wanted to hire); *Shields v. Penns Grove-Carneys Point Reg. Sch. Dist.*, 2016 WL 818815, at *5 (D.N.J. 2016) (*prima facie* case of reverse racial discrimination established because the Superintendent informed the plaintiff that the Board did not hire him because he is white and one of the seven Board members testified that race played a part in her decision to hire a minority over the plaintiff); *Zulauf v. Stockton Univ.*, 2017 WL 700111, at *8 (D.N.J. 2017) (*prima facie* case of reverse gender discrimination established because the defendant told the plaintiff that he could not be a full-time coach because he was a male, but if he were classified as a female that he could). "[E]vidence supporting the *prima facie* case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000); *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (holding "if the plaintiff has

pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case.").

Appellees seem to be advancing an argument that Appellant cannot prove his *prima facie* Equal Protection case under a "similarly situated" theory because other Caucasians have been promoted to leadership positions within the Borough without citing any authority. *See, e.g. Durst v. City of Philadelphia*, 798 Fed.Appx. 710, 713 (3d Cir. 2020) (the plaintiff attempted to establish the City's discriminatory intent by asserting that non-Caucasian employees, who were not similarly situated, engaged in the same conduct that led to his termination, but were not terminated). However, this argument misses the mark. These "comparators" that Appellees reference are not similarly situated to Appellant for a multiple of reasons. Notably, they do not work for the BFPD. The only "similarly situated" individual was Rabboh who Appellant alleges was promoted over him based on race. However, the fact that Rabboh was provided the same opportunity to interview for the

promotion to Chief is not dispositive of Appellant's *prima facie* case whatsoever.

What is pertinent in evaluating whether Appellant proved his *prima facie* Equal Protection case under *Iadimarco* is the evidence establishing that Appellees' decision to promote Rabboh was racially motivated. For the sake of brevity, the following direct evidence establishes Appellant's *prima facie* Equal Protection case under *Iadimarco*: Appellee Rivera's statement to Appellant that he did not look like the people of the Borough and that he was the one to suggest that Rabboh be considered for the promotion to Chief; Appellee Rivera's regular use of the term "my people" to refer to the Borough's Hispanic population; Appellees' race; Appellant's race; Rabboh's race; Appellee Deauna's testimony that he voted to promote Rabboh because of his race; Appellee Amatorio's statement to Commissioner Sulivan that he believed Rabboh was a better fit because he was a minority;[1] the statements made by Appellees at Rabboh's swearing in ceremony; and BA Gallo's

---

[1] *See Williams v. Borough of West Chester P.A.,* 891 F.2d 458 (3d Cir. 1989) (holding, on the authority of *Celotex v. Catrett,* 477 U.S. 317 (1986), that "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e., 'in a form that would be admissible at trial.'").

statement to Appellant that Appellees' decision to promote Rabboh was "all about race."[2] Further, Appellant has pointed to evidence sufficient discredit Appellees' "legitimate, nondiscriminatory reasons" for their decision to promote Rabboh which also proves his *prima facie* Equal Protection case under *Iadimarco. See Farrell*, 206 F.3d at 286; *Fuentes*, 32 F.3d at 764. The arguments offered by Appellees on this issue are not only unpersuasive, but they are unsupported. The evidence presented by Appellant soundly proves his *prima facie* Equal Protection case under *Iadimarco* which must result in a remand for further proceedings on the merits.

## V. All the "Legitimate, Non-Discriminatory" Reasons Offered by Appellees to Justify Their Vote for Rabboh are Pretext for Race Discrimination.

In Appellees' opposition brief, they admit that the District Court only outlined "some" of the "legitimate reasons" for their decision to promote Rabboh over Appellant in its *McDonnell-Douglass* analysis of Appellant's NJLAD and Equal Protection claims. In doing so, Appellees highlight the "legitimate reasons" that the District Court did not evaluate that they argue defeat Appellant's NJLAD and Equal Protection

---

[2] JA475 at 140:12-141:12.

claims. Appellees also ask this Court to overlook the undisputed evidence presented by Appellant that demonstrates that these reasons are pretext for race discrimination arguing that they should not be penalized for claiming a lack of recollection and that Appellant elaborated "out-of-context statements." Appellees effectively ask this Court to ignore the undisputed material facts that are detrimental to their defense which they likewise ignored in their opposition brief.

Notably absent from Appellees' brief is an argument that Rabboh was more qualified than Appellant for the promotion to Chief. Similarly telling, Appellees do not address Appellee Deauna's testimony that he voted to promote Rabboh because of he is minority, that Appellee Marte missed nearly Rabboh's entire interview, but testified that he voted to promote Rabboh *because of his interview*, or the obvious lies and stories told by Appellees Rivera and Marte to justify their vote for Rabboh. Rather, Appellees rely on 8 "legitimate reasons" that Appellant has already firmly proven to be pretext for race discrimination.

First, Appellees argue that they voted to promote Rabboh based on the "quality" of his interview. However, only Appellee Marte testified that he voted to promote Rabboh based on his interview. Appellant has

already established that this reasoning is pretextual since Appellee Marte missed nearly Rabboh's entire interview. To further support this argument, Appellees rely on the testimony of BA Gallo, a non-decision maker, who testified about his own assessment of the interviews. *See* JA215 153:4-13; 106:17-107:4. However, BA Gallo's testimony should be seen as nothing more than a *post hoc* fabrication since he testified that "Councilman Lodato was absolutely against the idea, as was Mayor Schmeltz, and, candidly, I was surprised by the [Appellees'] decision . . ." to promote Rabboh. JA693 at 180:5-25. BA Gallo also testified that he was "shocked" by Appellees' decision. JA694 at 182:3-7. Moreover, Councilman Lodato, who voted for Appellant, testified that there was nothing compelling about Rabboh's interview. JA642 at 40:16-41:10. Further, another non-decisionmaker similarly situated to BA Gallo, Mayor Schmeltz, testified that the interviews were neutral, but that Appellant's credentials were "overwhelmingly" better than Rabboh's. *See* JA713 at 19:14-20:3. At worst, this evidence creates a genuine dispute of material fact regarding the "quality" of the interview, and at best, proves that this reasoning is pretext for race discrimination.

Second, Appellees argue that they voted to promote Rabboh based on his five-year plan. However, only Appellee Amatorio testified that he voted to promote Rabboh based on his five-year plan even though he voted to promote Appellant over Madalone in 2015 who submitted the same five-year plan. This reasoning is pretext for race discrimination.

Third, Appellees argue that they voted to promote Rabboh based on his "ability to provide long-term continuity to the BFPD." This may be the most glaring *post hoc* fabrication of all Appellees' "legitimate" reasons. Notably, every Appellee testified that they did not discuss the candidates or interviews amongst themselves prior to the interviews and that they did not have any substantive discussions afterwards. It is beyond logic that Appellees could collectively arrive at the same opinion about Rabboh's "long-term continuity" without having a discussion. Moreover, not one Appellee knew how long either candidate had to work until they could retire and it is undisputed that both candidates committed to working an additional 5 years with Appellant representing that he would be willing to serve longer if needed. This reasoning is pretext for race discrimination.

Fourth, Appellees argue that they voted to promote Rabboh based on a "valid, enforceable equal opportunity employment recruitment policy which promotes diversity." Shockingly, no one Appellee mentioned this policy as a reason why they voted to promote Rabboh. The existence of this policy was only ever discussed during Appellant's deposition. *See* JA470 at 120:25-121:18. Notwithstanding, the policy's "affirmative action" language *only* applies to BFPD police officer recruitment and hiring as it "has a goal of reaching and maintaining a ratio of minority group employees in approximate proportion to the make-up of the community." *See* JA355. Logically, promotions do not affect the minority ratio in the BFPD which the policy unequivocally acknowledges:

**\* \* \***

C. Aggressively **recruit** qualified female and minority officers in an attempt to balance any racial or gender inequalities.

D. Continually evaluate **both recruitment and selection of candidates** ensuring that affirmative action objectives are met. This review should occur during periods of anticipated hirings.

**\* \* \***

F. Base decisions on **employment** so as to further the principle of equal employment opportunity and appropriate community representation while following guidelines of [the] New Jersey Civil Service Commission.

**G. Ensure that <u>promotion</u> decision are in accord [with the] New Jersey Civil Service Commission principles of equal employment opportunity by imposing only valid requirements for promotional opportunities.**

**\* \* \***

*See* JA356. Here, Section G entirely rebuts Appellees' purported reliance on the policy for promoting Rabboh over Appellant. This reasoning is pretext for race discrimination.

Fifth, Appellees argue that they voted to promote Rabboh because he represents the Borough's diversity. Interestingly, not one Appellant testified that they voted to promote Rabboh because he "represents the Borough's diversity." This reasoning would also contradict Appellees' collective testimony that they did not consider race in choosing to promote Rabboh over Appellant, although the evidence suggests otherwise. However, this *post hoc* fabrication is quite literally *per se* racial discrimination which should be considered an admission that Appellees voted to promote Rabboh over Appellant because of Rabboh's race.

Sixth, Appellees argue that they voted to promote Rabboh because of the Borough's history of promoting Caucasians to leadership positions. Confusingly, not one Appellee testified that they voted to promote Rabboh because of the Borough's history of promoting Caucasians to leadership positions. This evidence was only elicited during Appellant's deposition where he acknowledged that certain of the Borough's leadership positions were occupied by Caucasians. *See* JA484 at 176:1-178:3. This was never a reason offered by Appellees and should be ignored by this Court.

Seventh, Appellees argue that they voted to promote Rabboh because he was "legitimately qualified for the position of Chief." Whether Rabboh was "qualified" for the promotion to Chief is not the question; it is whether he was more qualified than Appellant. He was not. The facts articulated in Appellant's opening brief unequivocally prove that Appellant was more qualified than Rabboh which Appellees do not and cannot dispute. Appellees did not even attach Appellant's or Rabboh's resumes as exhibits to their motion for summary judgment as they defeat any argument that Rabboh was more qualified than Appellant. This reasoning is pretext for race discrimination.

Here, despite Appellees' attempts to circumvent the facts in this case, Appellant has proven by a preponderance of the evidence that every "legitimate, non-discriminatory reason" proffered is pretext for race discrimination which must result in a remand for further proceedings on the merits.

## VI. Appellees' Decision to Promote Rabboh Over Appellant Based on Race Constitutes an Official Borough Policy as Appellees are the Borough's Final Policymakers.

Appellees admit that the District Court erred by dismissing Appellant's § 1981 claim against the Borough upon its holding that there is no implied private cause of action against *individual state actors*. Indeed, Appellees concede that a private cause of action *does* exist against the Borough under *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). The District Court did not go any further in its evaluation of Appellant's § 1981 claim. However, Appellees argue that Appellant still cannot prove this claim under *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978) because he failed to "demonstrate any customs or unofficial policies of the Borough . . ." This argument must fail.

A municipal policy or custom can be established in two ways. "A policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) (quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Monell,* 436 U.S. at 690 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, (1970)). The Supreme Court in *Jett* held that:

> [I]t is for the jury to determine whether their [policymakers'] decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur . . . or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity.

*Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737 (1989).

"If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481 (holding that the "description of 'policy' is consistent with" Webster's definition as "*a specific decision* or

18

set of decisions designed to carry out such a chosen course of action.") (emphasis added). "More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible *whether that action is to be taken only once or to be taken repeatedly*." *Id.*; *accord McGreevy v. Stroup,* 413 F.3d 359, 368 (3d Cir. 2005) (confirming that *Pembaur* "makes clear that an official with policymaking authority can create official policy, even by rendering a single decision."). The Court looks to state law to identify who has final policymaking authority "concerning the action alleged to have caused the violation at issue." *McMillion v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

In this case, Appellant's § 1981 claim against the Borough is policy based which Appellees seem to overlook. The individual Appellees, as councilmembers, are the final policymakers of the Borough. *See N.J.S.A.* 40A:60-6(a) (The council shall be the legislative body of the municipality); *see also* JA654 at 22:12-20 (BA Gallo testifying that "every position within the Borough has to be approved by the [Council]" and "ultimately [promotions] [are] made by the [Council] and the mayor is the tie breaker . . ."). The individual Appellees, by consciously discriminating against

Appellant based on race as demonstrated in Appellant's opening brief and above, established an official Borough policy under *Monell* and its progeny. Thus, although the District Court did not substantively evaluate Appellant's § 1981 claim against the Borough as a result of its legal error, Appellant has nonetheless established a valid § 1981 claim against the Borough which must result in a remand for further proceedings on the merits.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Judgment of the District Court and its Order granting Appellees' motion for summary judgment be reversed, and the case be remanded for further proceedings on the merits.

Respectfully submitted,

/s/ Dylan T. Hastings
Dylan T. Hastings, Esquire
**WILLIAMS CEDAR LLC**
One South Broad Street
Suite 1510
Philadelphia, PA 19107
215-557-0099

May 22, 2025
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following: This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 9,657 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2016 version of Microsoft Word in 14 point Century Schoolbook font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and Internxt Virus Scanner has been run on the file containing the electronic version of this brief and no viruses have been detected.

*/s/ Dylan T. Hastings*
Dylan T. Hastings

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 22, 2025, I electronically filed Plaintiff-Appellant's Reply Brief using the appellate CM/ECF system. I also caused a copy of this brief to be served electronically on the following counsel for Defendants-Appellees:

John L. Shahdanian, Esquire
Trenk Isabel Siddiqi & Shahdanian P.C.
Court Plaza South, West Wing
21 Main Street, Suite 251
Hackensack, NJ 07601


*/s/ Dylan T. Hastings*
Dylan T. Hastings